UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN G. ROSENTHAL,<br><br>Plaintiff,<br><br>v.<br><br>ROOSEVELT ISLAND OPERATING CORPORATION, JOSEPH RABITO, KUMIKI GIBSON, and SIMONIDA SUBOTIC,<br><br>Defendants. | **COMPLAINT**<br><br>Case No.: 23 CIV<br><br>JURY TRIAL DEMANDED |

Plaintiff Susan G. Rosenthal, by and through her undersigned counsel, as and for her Complaint against Defendants Roosevelt Island Operating Corporation, Joseph Rabito, Kumiki Gibson, and Simonida Subotic, alleges as follows:

## Nature of this Action

1. This is an action brought under 42 U.S.C. § 1983 for the violation of the Due Process Rights secured by the Fourteenth Amendment to the United States Constitution. Plaintiff Susan G. Rosenthal ("Plaintiff" or "Rosenthal") was the President and Chief Executive Officer of the Roosevelt Island Operating Corporation ("RIOC") until her abrupt termination on June 19, 2020, for "racially and sexually offensive language." Rosenthal is neither a racist nor a sexist, but that is beside the point for present purposes. For present purposes, what is important is that Defendants, acting under color of New York State law, publicly branded her as such in the *New York Post* without giving her a chance –in fact, by affirmatively denying her the opportunity– to defend herself and her reputation. As such, under well-established precedent, Defendants are liable for their deprivation of Rosenthal's Constitutional Rights.

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because all Defendants are, upon information and belief, residents of New York and at least one resides within this District, and because a substantial part of the events giving rise to this claim occurred within this District.

## The Parties

3. Rosenthal, a Caucasian female of seventy-three (73) years of age, is a resident of the State of New York and County of New York. She was the General Counsel and then, following her promotion, the President and Chief Executive Officer of RIOC, from June 2015 through June 19, 2020, when her employment and position with RIOC were wrongfully terminated.

4. RIOC is a New York public benefit corporation with offices located at 591 Main Street, New York, New York 10044, created to plan, design, develop, operate and maintain Roosevelt Island.

5. Upon information and belief, Defendant Joseph Rabito ("Rabito"), is a resident of the State of New York and County of Albany. At relevant times, Rabito served as Executive Secretary to the Governor. Rabito is named herein in his individual capacity.

6. Upon information and belief, Defendant Kumiki Gibson ("Gibson") is a resident of the State of New York, County of New York. At relevant times, Gibson served as Counsel to the Governor. Gibson is named herein in her individual capacity.

7. Upon information and belief, Defendant Simonida Subotic ("Subotic") is a resident of the State of New York, Kings County. At relevant times, Subotic served as Deputy Secretary for Economic Development. Subotic is named herein in her individual capacity.

**Rosenthal's Termination**

8. Far from being a racist or sexist, Rosenthal has had a longstanding commitment and involvement in public service, community service, diversity and inclusion, promoting equal opportunity, and anti-racism.

9. During Rosenthal's tenure as President and Chief Executive Officer of RIOC, she was actively involved with improving the quality of life on Roosevelt Island. The list of her accomplishments is too long to list herein and includes, but is not limited to, renovation of the RIOC-subsidized youth center, upgrading infrastructure, restoring Roosevelt Island's many landmarks, promoting and facilitating public art projects, increasing support of community services, and personal involvement in the training of safety officers with respect to community policing which helped lower the crime rate.

10. Rosenthal's record of achievement in service of the public good spurred at least one RIOC Board Member, a City Councilman, a State Assembly Member, the former Executive Director of Four Freedoms Park, a major real estate developer on Roosevelt Island, a passel of significant local businessmen, *and* her three African–American "direct reports" at RIOC, to all tell her in words or substance upon or shortly after her termination that she was RIOC's best President and Chief Executive Officer ever, a stellar and admirable leader and person.

11. However, Rosenthal's advocacy on behalf of the Island, and her success in diversifying RIOC, also brought backlash as a white woman leading an increasingly non-white organization. At the same time, she raised the ire of the administration of then-Governor Andrew Cuomo by tirelessly pushing Albany to protect the Island.

12. Perhaps the major issue as to which there arose disagreements between Rosenthal and New York State officials in Albany was that of the abandoned "steam tunnels" on Roosevelt Island. These tunnels are located underground along Roosevelt Island's promenade

on its eastern side and, years ago, carried steam essentially between two hospitals, Goldwater on the south and Coler to the north. Today, the steam tunnels act as a protective sea wall for Roosevelt Island. However, they have been, and are today, in serious disrepair, as demonstrated by a 2012 study by the Langan Engineering firm and a prior Army Corps of Engineers report. In or about 2017, Rosenthal retained Langan Engineering to update and complete its 2012 report. As Rosenthal feared, the firm's conclusion was ominous: there could well be catastrophic results were Roosevelt Island to face a major weather event, owing to the tunnels' poor condition.

13. During her time as RIOC's General Counsel, Rosenthal came to the conclusion – shared by her two successors in that job – that the City of New York (the "City") had the ultimate legal responsibility to attend to the tunnels, but the City denied responsibility. The State similarly denied responsibility, but nevertheless refused to demand that the City repair the tunnels, and also rejected Rosenthal's proposal for a deal by which the State would assume the responsibility to repair the tunnels in exchange for the City's transfer to it of ownership of Roosevelt Island's steam plant (valuable real estate that the State or a public-private partnership might have developed).

14. In the absence of a decision or action from Albany, Rosenthal composed a memorandum stressing both the public safety risks, as well as the State's political jeopardy, stemming from the steam tunnels. For many months, she highlighted the issue in writing to Defendant Subotic every other week as part of a "red flags – green flags" list. Even so, no plan of action on the steam tunnels had emerged from Albany as of Rosenthal's departure from RIOC.

15. Whether because of her race, or because of her refusal to let the dangerous matter of the steam tunnels drop, each of the Defendants decided, or acquiesced in the decision, to terminate

Rosenthal as President and CEO of RIOC. That should have been easy enough to effectuate because Rosenthal was an at-will employee who could have been fired "for any reason or for no reason" (as courts frequently phrase it), as long as the reason was not discriminatory or retaliatory. Rosenthal believes that she *was* fired for exactly those impermissible reasons; she has appropriate lawsuits pending to address that, as described below, but it does not matter whether she was right for present purposes, because Rosenthal was not quietly fired for "no reason."

16. Rosenthal was fired on June 19, 2020, for having "used racially and sexually offensive language, in clear violation of state policy and the strict standards set by this Administration." And rather than firing her quietly, an announcement was made to the press, with the *New York Post* quoting a statement from "Cuomo senior advisor Richard Azzopardi" as follows:

> A complaint was made to the Governor's office on June 12th by an employee of the Roosevelt Island Operating Corporation that alleged that the President of the organization had used inappropriate language and engaged in inappropriate conduct in the workplace. … This complaint was immediately referred to the New York State Governor's Office of Employee Relations for investigation. This investigation substantiated that the president had used racially and sexually offensive language, in clear violation of state policy and the strict standards set by this Administration. The president was immediately terminated.…

17. The *New York Post* also noted that "[w]ords of Rosenthal's termination came on Juneteenth - the holiday celebrating the emancipation of slaves in the United States," without noting that the decision to terminate Rosenthal was actually made on June 17, but with nobody, including Rosenthal, being told for two days so that the termination for alleged racism could "coincidentally" happen on that significant date.

18. Upon information and belief, Richard Azzopardi received his information directly or indirectly from Defendants Gibson, Subotic and/or Rabito, and transmitted it to the *New York Post* at their instruction or with their approval.

**Defendants Violated Rosenthal's Due Process Rights**

19. It is well-established that an at-will governmental employee such as Rosenthal can be terminated without explanation and will be entitled to neither a pre- nor post-termination hearing, *unless* a reason is in fact given for the termination that will impair the employee's future employment prospects, in which case Due Process requires that the employee be given a hearing so as to have an opportunity to clear his or her name.

20. Here, it cannot reasonably be denied that being publicly designated a racist and sexist in the *New York Post* was stigmatizing and detrimental to Rosenthal's future employment prospects (in addition to being personally hurtful). Due Process entitled Rosenthal to a name-clearing hearing.

**Defendants Denied Rosenthal a Pre-Termination Hearing**

21. Contrary to the statement in the *New York Post* that the investigation "substantiated" the complaint that had been lodged with the Governor's Office on Friday, June 12, 2020 (the "June 12 Complaint"), the so-called investigation actually determined that the allegations contained in the June 12 Complaint were either not supported by credible evidence or were not sufficiently offensive to warrant discipline. That determination had been made because Rosenthal was aware of the substance of the June 12 Complaint (it had been emailed to approximately 25 people) and the investigator had given Rosenthal the opportunity to address and refute those accusations.

22. However, Defendants have claimed that the three-day investigation allegedly discerned *other* conduct by Rosenthal that supposedly justified her termination, conduct and evidence that Rosenthal was never given the opportunity to confront and address (although the investigator briefly spoke to Rosenthal over the telephone about the new accusations, Rosenthal was never told exactly what she had been accused of and was never permitted to hear the supposed audio recording that the investigator had allegedly uncovered and was relying on.).

23. The "investigation" itself was initiated by Defendant Gibson and conducted with suspicious haste and contrary to standard procedures. The investigator did not prepare a written report or keep copies of the supposedly incriminating evidence. Defendant Gibson has acknowledged that the termination decision was made based on what is at best triple hearsay in that some unidentified employee(s) allegedly described something to the investigator, who then orally conveyed it to her supervisor, who then orally conveyed it to Gibson. The entire "investigation" was concluded in just three days, as it effectively commenced on Monday, June 15 and ended just two days later on June 17, 2020, with the decision of Defendants Gibson, Subotic and Rabito to terminate Rosenthal, supposedly based on those oral reports.[1]

24. Even if the accusations against Rosenthal had been plausible, they were not the sort of allegations that warranted such immediate action that there was no time to follow standard procedures or to permit Rosenthal to confront and refute the allegations against her. Nevertheless, in a joint call on June 19, 2020, Defendants Rabito, Gibson and Subtonic fired Rosenthal over the telephone and told her that she could not re-enter her office. Later the same day, *The New York Post* published what it had been told by the Governor's Office about Rosenthal's termination.

25. The Board of Directors of the remaining Defendant, RIOC, had the authority to hire and fire RIOC's executives and could have resisted Rosenthal's termination, or at least could have heard Rosenthal's side of the story. Instead, RIOC's Board simply acquiesced and held an emergency meeting on July 19, 2020, to appoint her successor.

**Defendants Denied Rosenthal a Post-Termination Hearing**

26. Despite Rosenthal having been terminated and disparaged in the *New York Post*, there might have been no Due Process violation if Rosenthal had been accorded a post-deprivation

[1] Because on June 12, the investigator interviewed only the author of the June 12 Complaint, and ultimately rejected her allegations, the investigation effectively commenced with other interviewees on June 15, 2020.

hearing at which she had an opportunity to clear her name.

27. In New York, a proceeding brought under Article 78 of the Civil Practice Law and Rules provides the recognized forum for post-termination name-clearing hearings.

28. On October 19, 2020, Rosenthal timely commenced such a proceeding (the "Article 78 Proceeding") against New York State and all of the Defendants herein, in the New York County Supreme Court, captioned *In the Matter of Susan Rosenthal v. Roosevelt Island Operating Corporation*, *et al.,* Index No. 158795/2020.

29. Rosenthal named the individual Defendants herein as Respondents in the Article 78 Proceeding and accused them of acting arbitrarily and capriciously in terminating her, but sought no relief from them individually. Rather, her Petition simply sought to prove that the June 12 Complaint – which she understood as being the reason for her termination as reported in the *New York Post* – was entirely unfounded, and she sought reinstatement, attorneys' fees, and back pay from RIOC.

30. The Defendants herein responded to Rosenthal's Petition by admitting, for the first time, that the investigation had determined that the June 12 Complaint was in fact baseless. But they also doubled-down in accusing Rosenthal of racial and sexual discrimination, claiming, also for the first time, that the investigation had uncovered *other* supposed misconduct and stating:

> the decision to terminate Petitioner was based *solely* on the clear and strong evidence, revealed through an impartial and thorough investigation, of her sexually and racially discriminatory and offensive comments in the workplace, in front of her employees. This decision was neither arbitrary nor capricious and was clearly mandated by State policies.

State Executive Respondents' and Board Member Respondents' Memorandum of Law in Opposition to Petitioner's Article 78 Proceeding (NYSCEF Doc. No. 33) at pp. 8–9. As alleged

support for those assertions, Defendants relied on, among other things, supposed "audio recordings of Petitioner making offensive racial and sexual remarks." *Id*. pp. 3–4.

31. Defendants, moreover, took the position that Rosenthal was not entitled to a hearing in the Article 78 proceeding, and thus not entitled to confront and refute the evidence against her, because, they argued, the very existence of the investigator's conclusions was enough to prevent the termination from being arbitrary and capricious, regardless of whether they were accurate. At the same time, despite the existence of a Court Order compelling them to produce items in discovery, including the supposed audio recording, Defendants produced nothing.

32. Ultimately, the Court in the Article 78 Proceeding agreed with Defendants and dismissed the Article 78 Proceeding on the basis that the mere existence of the accusations against Rosenthal were sufficient grounds for her termination, even though "the people to whom petitioner allegedly said these insensitive, actionable remarks could be lying; but the appropriate forum to determine that would be a trial in a plenary action. Both sides here are entitled to discover documents and depose witnesses and to a full trial on the merits before an impartial finder of fact to determine what actually motivated respondents to terminate petitioner." Order dated July 6, 2021 (NYSCEF Doc. No. 69), at p. 2.

33. Defendants opposed Rosenthal's motion for reargument, and the Article 78 Court adhered to its decision, in the process vacating its prior discovery Order requiring the production of the supposed audio recordings as "moot," but without prejudice to Rosenthal's seeking them in a plenary action. Order dated December 13, 2021 (NYSCEF Doc No. 90) at pp. 1–2. The Article 78 Court's dismissal was upheld on appeal. Decision and Order of the Appellate Division, First Judicial Department, Case Nos. 2021-03157 & 2022-00442 (NYSCEF Doc. No. 17), at p. 2.

34. Rosenthal had already commenced the "plenary action" wherein the Article 78 Court had expected Rosenthal to receive discovery and have the evidentiary hearing at which it would be

determined whether her accusers were "lying." *Rosenthal v.* Roosevelt *Island Operating Corporation*, *et al.,* Index No. 154096/2021 (Sup. Ct. NY Co.) (the "Plenary Action").

35. Defendants, however, immediately moved to dismiss the Plenary Action, and thus to again deny Rosenthal the opportunity for a name-clearing hearing, on basis of collateral estoppel, arguing that the Article 78 Court's dismissal precluded inquiry into the reasons for terminating her. The Court in the Plenary Action agreed, dismissing with prejudice Rosenthal's discrimination claims in which she contended that her termination had been motivated not by any actual racist or sexist behavior, but because of her race, and dismissing all other claims without prejudice to assertion in the Court of Claims against New York State. Order filed July 26, 2022 (NYSCEF Doc. Nos. 70, 71, 72). An appeal from that Order is pending. New York Supreme Court, Appellate Division, First Judicial Department, Case No. 2022-03686.

**AS AND FOR A CLAIM FOR RELIEF**

36. Rosenthal repeats and realleges each allegation set forth in paragraphs 1 through 35, above, as though set forth in full again herein.

37. The same day that Plaintiff was terminated from her position at RIOC, the New York Governor's office publicly stated that it was because an "investigation substantiated that [Rosenthal] had used racially and sexually offensive language, in clear violation of state policy and the strict standards set by [the then-Governor Andrew Cuomo] Administration."

38. Rosenthal did not in fact use racially and sexually offensive language in violation of state policy or the standards set by [the then-Governor Andrew Cuomo] Administration.

39. Rosenthal was not accorded a pre-termination hearing.

40. Defendants Gibson, Subotic and Rabito are high-ranking state officials with final authority over significant matters, and each possessed the power to have accorded Rosenthal a pre-termination hearing before terminating her and announcing that she was a racist and sexist.

41. RIOC had the ability, as did Gibson, Subotic and Rabito, to accord Rosenthal a post-termination hearing, but did not do so and actively resisted Rosenthal's attempts to procure one.

42. Each and every one of the Defendants opposed Rosenthal's attempts to secure a post-termination hearing in court, at which hearing she would have had the opportunity to clear her name of the stigma resulting from the public disclosure of the supposed reason for her termination.

43. Rosenthal's termination as President and CEO of RIOC, coupled with the public disclosure of the false reasons for her termination and the denial of the opportunity to clear her name at an appropriate hearing, deprived Rosenthal of a liberty interest without Due Process of law.

44. By reason of the foregoing, Rosenthal sustained damages in amounts to be determined at trial, but not less than $ 1,000,000.00.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Rosenthal against Defendants, jointly and severally, in an amount to be determined after trial, together with punitive damages and Rosenthal's attorneys' fees, and granting Rosenthal such other and further relief as the Court determines to be just and proper.

**Jury Demand**

Rosenthal demands trial by jury.

Dated: New York, New York
November 1, 2023

STORCH BYRNE LLP

By: /s/ Steven G. Storch_____
Steven G. Storch (SS5241)
437 Madison Ave., 24th Floor
New York, NY 10022
(212) 931-1005
sstorch@storchbyrnelegal.com
*Attorneys for Plaintiff*