25-1667
Rosenthal v. Roosevelt Island Operating Corporation

In the
United States Court of Appeals
for the Second Circuit

---

August Term 2025
Argued: January 30, 2026
Decided: August 10, 2026

No. 25-1667

---

SUSAN G. ROSENTHAL
*Plaintiff-Appellant*,
v.
ROOSEVELT ISLAND OPERATING CORPORATION, JOSEPH RABITO, KUMIKI GIBSON, SIMONIDA SUBOTIC,
*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Southern District of New York
No. 23-cv-9660

---

Before: SACK and PÉREZ, *Circuit Judges*, and PRESKA, *District Judge*.*

---

STEVEN G. STORCH, Storch Byrne LLP, New York, NY, *for Plaintiff-Appellant*.

HOLLY G. ROGERS, Melick & Porter, LLP, New York, NY *for Defendant-Appellee Roosevelt Island Operating Corporation*.

---

* Judge Loretta A. Preska, of the United States District Court for the Southern District of New York, sitting by designation.

STEPHEN J. YANNI (Barbara D. Underwood, Ester Murdukhayeva, *on the brief*), on behalf of Letitia James, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees Joseph Rabito, Kumiki Gibson, and Simonida Subotic*.

PRESKA, *District Judge*:

Appellant Susan Rosenthal served as the President and CEO of the Roosevelt Island Operating Corporation ("RIOC"), a public benefit corporation that governs New York's Roosevelt Island. On June 19, 2020, the New York Governor's Office terminated Rosenthal with immediate effect. That same day, a senior adviser to then-Governor Andrew Cuomo informed a *New York Post* reporter that Rosenthal had been terminated following a complaint and investigation into offensive comments purportedly made by Rosenthal. Quoting the adviser as its primary source, a *Post* article soon followed: "Roosevelt Island Operating Corp. head fired over 'racially and sexually offensive' remarks."

Rosenthal denies the claims attributed to the adviser by the *Post*. According to Rosenthal, the termination was instead a political reprisal for Rosenthal's complaints regarding New York authorities' alleged refusal to address weather-related threats to Roosevelt Island. Rosenthal further alleges that the Governor's

Office—via Defendants-Appellees Rabito, Gibson, and Subotic who worked in Governor Cuomo's administration at the time—sought to discredit her by feeding false allegations to the *Post*. After two unsuccessful state court proceedings, Rosenthal now brings a federal "stigma-plus" constitutional claim for money damages under 42 U.S.C. § 1983, arguing that her termination and alleged public smearing by state officials deprived her of a liberty interest without due process of law.

The question before us is not whether Rosenthal states a meritorious § 1983 claim, but whether the district court below correctly concluded that, under New York law, the doctrine of *res judicata* precludes Rosenthal from asserting *any* § 1983 claim arising from her termination. We conclude that Rosenthal's state court dismissals do not preclude her instant § 1983 claim. Instead, the state court dismissals adjudicated Rosenthal's discrimination claims on the merits while expressly preserving Rosenthal's right to refile her § 1983 claim in another forum. Under New York law, the doctrine of *res judicata* does not bar a claim that was previously dismissed without prejudice and with express leave to refile—even where other claims arising from the same transaction were dismissed on the

merits. Accordingly, we **VACATE** the district court's judgment and **REMAND** the case for further proceedings.

## BACKGROUND

RIOC is a public benefit corporation that governs New York's Roosevelt Island. From approximately June 2015 to June 2020, Rosenthal served as President and CEO of RIOC, in which capacity Rosenthal was an at-will state employee. At all relevant times, Defendant Joseph Rabito served as Executive Secretary to the Governor of New York, Defendant Kumiki Gibson served as Counsel to the Governor, and Defendant Simonida Subotic served as New York State Deputy Secretary for Economic Development.

In the course of her work for RIOC, Rosenthal claims that she discovered risks to Roosevelt Island posed by its network of steam tunnels, which act as Roosevelt Island's protective sea wall. App'x at 12. Rosenthal commissioned an engineering team to study the tunnels, which concluded that there could be catastrophic results for Roosevelt Island in the face of a major weather event. App'x at 12. Rosenthal then composed a memorandum outlining what she saw as the unacceptable risks to public safety posed by the state's inaction. App'x at 12.

As alleged by Rosenthal, these safety complaints raised the ire of the Governor's Office and placed a target on her back for retaliation. App'x at 12-13.

On June 19, 2020, Rosenthal was informed by Defendants Rabito, Gibson, and Subotic (the "Individual Defendants") that her employment with RIOC had been terminated. That same day, the *New York Post* published an article with the headline: "Roosevelt Island Operating Corp. head fired over 'racially and sexually offensive' remarks." App'x at 123. The article explained:

> "A complaint was made to the Governor's office on June 12th by an employee of the Roosevelt Island Operating Corporation that alleged that the President of the organization had used inappropriate language and engaged in inappropriate conduct in the workplace," Cuomo senior adviser Richard Azzopardi said in a statement.
>
> "This complaint was immediately referred to the New York State Governor's Office of Employee Relations for investigation.["] "This investigation substantiated that the president had used racially and sexually offensive language, in clear violation of state policy and the strict standards set by this Administration."
>
> "The President [Rosenthal] was immediately terminated."[1]

App'x at 124-25. The investigation reported by the *Post* was conducted by Georgianna Martin of the Anti-Discrimination Investigations Division ("ADID") of the New York Governor's Office of Employee Relations. App'x at 66. In a later

[1] Rosenthal alleges that Azzopardi received this information from the Individual Defendants and transmitted it to the press at their instruction or approval. App'x at 13.

sworn affidavit submitted by Martin, Martin stated that the June 12 complaint provided five examples of alleged discriminatory behavior by Rosenthal, including that (i) Rosenthal purchased a painting for her office depicting a slave picking cotton; (ii) Rosenthal referred to her son-in-law as "black as hell," and her daughter as "white as snow"; (iii) Rosenthal said her grandchild was "the real African American"; (iv) Rosenthal stated that "not all black people look alike"; and (v) on another occasion, Rosenthal stated that the "last time she trusted someone she lost her virginity." App'x at 67.

Martin then interviewed both the source of the complaint and additional RIOC employees. In the course of those interviews, Martin reportedly discovered additional allegations that Rosenthal had made numerous sexually and racially offensive comments, including by listening to audio recordings of Rosenthal that were played for Martin. Among other things, Rosenthal allegedly told an employee whom she perceived to be Middle Eastern that he looked like a "terrorist," made repeated references to employees' genitalia, and on at least one occasion, used the n-word slur in reference to a Black employee. App'x at 68-70. Martin also interviewed Rosenthal over the results of Martin's investigation, and Rosenthal "continued to deny the most serious allegations." App'x at 70.

Rosenthal generally disputes this characterization of events. Instead, Rosenthal claims that she was pretextually terminated and smeared in the press in retaliation for her safety complaints. To that end, Rosenthal's complaint contends that, contrary to the statements reported in the *Post*, the investigation commissioned by the Governor's Office "actually determined that the allegations contained in the June 12 Complaint were either not supported by credible evidence or were not sufficiently offensive to warrant discipline." App'x at 14. Rosenthal further alleges that Defendants later "admitt[ed] . . . that the investigation had determined that the June 12 Complaint was in fact baseless" in New York state proceedings, and that Defendants were relying on other evidence which was never produced to her. App'x at 16-17.

## PROCEDURAL HISTORY

### A. The Article 78 Proceeding

On October 20, 2020, Rosenthal commenced a CPLR Article 78 special proceeding in New York Supreme Court challenging her termination.[2] Her

---

[2] An Article 78 special proceeding is designed to enable expedited challenges to purportedly unlawful state administrative action, including "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." NY CPLR § 7803(3). "Reflecting the proceeding's roots in the earlier petitions for writs of mandamus, prohibition, and certiorari to review, the questions that may be raised in such a proceeding are limited." *See Whitfield v. City of New York*, 96 F.4th 504, 511, 518-22 (2d Cir. 2024) (citations omitted).

verified petition named RIOC, the State of New York, the Individual Defendants, and eight RIOC board members as respondents. App'x at 72-90. The Article 78 petition alleged that Rosenthal's termination was "arbitrary and capricious" and "made 'for a constitutionally impermissible purpose or in violation of statutory or decisional law,'" App'x at 88 (quoting *Matter of York v. McGuire*, 63 N.Y.2d 760, 761 (1984)), in part because the respondents "turned a blind eye to what were obvious false and baseless allegations" and "refused and failed to afford Rosenthal an opportunity to review all the allegations and supposed evidence against her," App'x at 86-87. Accordingly, Rosenthal sought reinstatement, back pay, and attorneys' fees.

Defendants moved to dismiss Rosenthal's petition. In support of their motion, Defendants submitted a sworn affidavit from Martin, the ADID investigator. Martin's affidavit stated that she had been directed by an ADID superior to investigate the June 12 complaint and "concluded that the allegations made in the June 12 E-mail had not been substantiated as violations of the policies set forth in the EEO Handbook." App'x at 71. However, Martin also stated that she had obtained other evidence in the course of investigating the June 12 complaint, including "audio recordings that had been made by a RIOC employee,

which were contemporaneously played for me," App'x at 69, that documented other violations of workplace policy by Rosenthal. Rosenthal moved to open discovery to obtain the alleged recordings, which the presiding justice ordered shortly thereafter. Supp. App'x at 45-46. According to Rosenthal, Defendants did not produce the recordings, prompting Rosenthal to prepare a motion to compel and for contempt proceedings.

Before Rosenthal filed her contempt motion, however, the presiding justice dismissed Rosenthal's Article 78 petition in its entirety. *Rosenthal v. Roosevelt Island Operating Corp.*, 2021 WL 2891517 (N.Y. Sup. Ct. July 6, 2021). The court emphasized that the judgment was "limited to the issue of whether the administrative action has a rational basis for its determination." *Id.* at *1. Applying that limited scope of review, the presiding justice concluded that the state officials' "determination to terminate petitioner clearly was not irrational" given the comments that were cited as justification for Rosenthal's termination. *Id.* at *2. Critically, however, the presiding justice caveated that:

> [T]he people to whom petitioner allegedly said these insensitive, actionable remarks could be lying; but the appropriate forum to determine that would be a trial in a plenary action . . . . Indeed, petitioner apparently has already commenced such an action, claiming that respondents violated her federal civil rights. The instant dispute belongs there, not here.

*Id.* Rosenthal moved for reargument, asserting that Defendants had defied the court's discovery order and never produced the audio recording. The court adhered to its dismissal and vacated the discovery order as moot, again emphasizing the abbreviated nature of an Article 78 proceeding and that Rosenthal's claims should be adjudicated in a full plenary action:

> The essential difference between a CPLR Article 78 proceeding for administrative review and a plenary action is as follows: the former is meant to be quick; disclosure is rare; and the court's inquiry ends if it finds a rational basis for the challenged action, which it has. The latter can take years, allows for ample disclosure, and is decided by a trier of fact. The instant proceeding is futile, although an action may not be (and one is currently pending before another Justice).

App'x at 91. On appeal, the First Department affirmed, concluding that the respondents had identified legitimate and nondiscriminatory reasons for Rosenthal's termination that were sufficient to defeat an Article 78 proceeding. *Matter of Rosenthal v. Roosevelt Island Operating Corp.*, 177 N.Y.S.3d 549 (1st Dep't 2022).

**B. The Plenary Action**

In April of 2021, while the Article 78 proceeding was still pending, Rosenthal also commenced a plenary action in the New York Supreme Court against the same parties named in the Article 78 proceeding (the "Plenary

Action"). The Plenary Action alleged six claims: (i) discriminatory termination in violation of Title VII of the federal Civil Rights Act; (ii) discriminatory termination in violation of the New York State Human Rights Law; (iii) discriminatory termination in violation of the New York City Human Rights Law; (iv) common-law defamation; (v) federal civil rights violations, in violation of 42 U.S.C. § 1983; and (vi) whistleblower retaliation, in violation of New York Labor Law § 740. App'x at 57-63.

On July 25, 2022, the New York Supreme Court granted the named defendants' motion to dismiss Rosenthal's discrimination claims (Counts I, II, and III) with prejudice, finding that the Article 78 dismissal was a final judgment on the merits that precluded any claims grounded in unlawful discrimination. *Rosenthal v. Roosevelt Island Operating Corp.*, 2022 WL 23049783, at *1 (N.Y. Sup. Ct. July 25, 2022) (the "Plenary Judgment"). Critically, however, the Supreme Court dismissed all other causes of action—including Rosenthal's § 1983 claim—"without prejudice as they were improperly brought in Supreme Court, instead of before the Court of Claims which has jurisdiction over claims against New Yo[r]k State." *Id.* Alternatively, the Supreme Court invited Rosenthal to refile these dismissed claims in Supreme Court against defendants in their individual

capacities. *Id.* at *1 n.1. The First Department affirmed. *Rosenthal v. Roosevelt Island Operating Corp.*, 200 N.Y.S.3d 341 (1st Dep't 2023).

C. **The Federal § 1983 Action**

On November 2, 2023, Rosenthal filed this federal action in the Southern District of New York, alleging a single claim under 42 U.S.C. § 1983 for deprivation of liberty without due process. App'x at 9. The gravamen of Rosenthal's claim is that her "termination as President and CEO of RIOC, coupled with the public disclosure of the false reasons for her termination and the denial of the opportunity to clear her name at an appropriate hearing, deprived [her] of a liberty interest without Due Process of law" and thus entitles her to money damages. App'x at 19. The operative complaint does not allege any form of discrimination. Nor does the complaint seek a name-clearing hearing, backpay, or any other remedial measures. Instead, the complaint seeks more than $1,000,000 in monetary damages to compensate Rosenthal for the alleged harms inflicted.

Appellees moved to dismiss the complaint on multiple grounds, including *res judicata*. On May 28, 2025, the district court granted both motions to dismiss on *res judicata* grounds but did not reach the other grounds for dismissal raised by Appellees. As part of its analysis, the district court concluded there had been "two

final judgments on the merits regarding Rosenthal's claims raised in connection with her termination from RIOC, with state courts dismissing her Article 78 Proceeding and her plenary action on the merits," and that "Plaintiff does not dispute that the rulings in these cases were final judgments on the merits." *Rosenthal v. Roosevelt Island Operating Corp.*, 2025 WL 1518240, at *3 (S.D.N.Y. May 28, 2025). Operating on that assumption, the district court reasoned that because Rosenthal's § 1983 claim "ar[ose] from the same transaction as her claims in state court, it is barred." *Id.* at 4. This appeal followed.

**STANDARD OF REVIEW**

"We review *de novo* the district court's dismissal under Rule 12(b)(6) and the district court's application of *res judicata*," *Whitfield v. City of New York*, 96 F.4th 504, 518 (2d Cir. 2024), "accepting all allegations in the complaint as true and drawing all inferences in favor of the plaintiff," *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). Our review of a *res judicata* dismissal "is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice," including all filings and judgments made in state court. *VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025) (quoting *TechnoMarine*, 758 F.3d at 498).

## DISCUSSION

The district court's dismissal hinged exclusively on *res judicata*. Yet Rosenthal's state court dismissals were not preclusive judgments as to Rosenthal's § 1983 claim. Thus *res judicata* alone cannot bar Rosenthal's instant suit. Because we do not reach the alternative grounds for dismissal offered by Appellees, we remand the case for further proceedings.[3]

### A. *Res Judicata*

Under the full faith and credit statute, 28 U.S.C. § 1738, federal courts must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Whitfield*, 96 F.4th at 522 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Because New York state courts issued both decisions at issue, we apply New York law to determine the preclusive effect of those decisions. *VDARE*, 162 F.4th at 83.

---

[3] In their briefs and at oral argument, both parties conflated issues that go to the merits of Rosenthal's § 1983 claim with the elements of a *res judicata* affirmative defense. Appellees suggested that Rosenthal's alleged failure explicitly to request a name-clearing hearing is grounds to preclude her § 1983 claim entirely. Appellants countered that a name-clearing hearing need not be requested explicitly and argue that Rosenthal's § 1983 claim may proceed based on the existing record. But whether Rosenthal explicitly or impliedly requested a name-clearing hearing goes to the issue of whether Rosenthal can state a § 1983 procedural due process claim at the pleading stage. It has no bearing on the affirmative defense of *res judicata* that was the sole basis for the district court's dismissal.

The doctrine of *res judicata*, sometimes referred to as claim preclusion, is an affirmative defense that must be pleaded and proven by a defendant asserting it. *Whitfield*, 96 F.4th at 523. Under New York law, a defendant asserting such a defense bears the burden to show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine*, 758 F.3d at 499 (alteration in original) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). Where there is uncertainty in the record, "[d]oubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Buechel v. Bain*, 97 N.Y.2d 295, 305 (2001). New York law "has taken a pragmatic and flexible attitude toward claim preclusion," and its application of the rule "is grounded in public policy concerns, including fairness to the parties, and is 'intended to ensure finality, prevent vexatious litigation and promote judicial economy.'" *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021) (quoting *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100 (2005)). At bottom, the doctrine "seeks to prevent litigants from taking two bites at the apple; however, '[i]n properly seeking to deny [litigants]

two days in court, [we] must be careful not to deprive [them] of one.'" *Id.* at 112 (alterations in original) (quoting *Reilly v. Reid*, 45 N.Y.2d 24, 28 (1978)).

**B. The State Court Judgments**

As we explain below, the district court erred in finding that there were two "final judgments on the merits" because the "state courts dismiss[ed] [Rosenthal's] Article 78 Proceeding and her plenary action on the merits." *Rosenthal*, 2025 WL 1518240, at *3. Specifically, the district court failed to distinguish between the discrimination claims that were dismissed with prejudice and Rosenthal's non-discrimination claims that were dismissed without prejudice and with express leave to refile elsewhere.

i. *The Plenary Action's Dismissal Without Prejudice*

The Plenary Judgment cannot have preclusive effect here because it did not dismiss Rosenthal's § 1983 claim on the merits.

To be sure, we can hardly fault the district court for concluding that the Plenary Action was claim preclusive. The parties' presentation of the record was far from a model of clarity, and the precise nature of the state court judgments continued to confound even the litigants themselves at oral argument before this Court. Strictly speaking, the district court was not incorrect in observing that the

Plenary Action had produced *a* final judgment on the merits; as noted, the Plenary Action did dismiss Rosenthal's *discrimination* claims with prejudice, which would plainly be precluded from relitigation. It is also true that a final judgment on the merits normally precludes a plaintiff from filing other claims arising from the same transaction, as this would amount to improper "splitting" of the claims from a single transaction across multiple lawsuits.[4] Thus, if Rosenthal had opted not to bring her § 1983 claim in the Plenary Action, then Rosenthal could well have been precluded from bringing a new federal § 1983 suit arising from the same transaction.

The wrinkle here is that Rosenthal *did* assert her § 1983 claim in the plenary proceeding. Unlike the discrimination claims, the New York Supreme Court did not dismiss Rosenthal's § 1983 claim on the merits. Rather, the court dismissed all non-discrimination claims—including the § 1983 claim—without prejudice on the basis that they were improperly filed in New York Supreme Court. And it is long settled that a "dismissal 'without prejudice' lacks a necessary element of res

---

[4] *See VDARE*, 162 F.4th at 83 (under New York law, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (quoting *Simmons*, 37 N.Y.3d at 111); *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006) (*res judicata* is "a rule against the splitting of actions that could be brought and resolved together" (citing Restatement (Second) of Judgments § 24 (1982))).

judicata" because "such a judgment is not a final determination on the merits." *Landau, P.C. v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 13 (2008). Indeed, "a dismissal of an action by a New York court 'may not be considered as a dismissal on the merits' if it does not specifically state that the dismissal is on the merits." *Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010) (quoting *Nems Enters., Ltd. v. Seltaeb, Inc.*, 263 N.Y.S.2d 525, 526 (1st Dep't 1965)). What, then, is a district court to do where, as here, a New York state court has issued a final judgment on the merits regarding *some* claims, while dismissing without prejudice related claims that arose from the same transaction?

We recognize that our own precedent has not squarely addressed such a scenario. In our view, however, the New York Court of Appeals has resolved precisely this conundrum by adopting the relevant Restatement exception permitting a plaintiff to refile specific claims—notwithstanding a final judgment on the merits as to *other* claims arising from the same transaction—where "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." *Landau*, 11 N.Y.3d at 14 (alteration in original) (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999)).

That rule, first articulated in *Parker*, arose from an analogous fact pattern where a dismissed municipal employee filed an Article 78 petition seeking reinstatement and asserting civil rights claims for money damages under § 1983. 93 N.Y.2d at 346-47. Although the Article 78 proceeding ultimately rejected the request for reinstatement on the merits, the same judgment dismissed the civil rights claims "without prejudice to [plaintiff's] commencement of the appropriate plenary action." *Id*. (alteration in original). The plaintiff then filed a plenary action for § 1983 damages, which was dismissed by the Second Department as barred by *res judicata*. Applying the Restatement's exceptions to claim splitting, the New York Court of Appeals explained that *res judicata* is inapplicable where a plaintiff could not pursue claims in a prior action "because of the limitations on the subject matter jurisdiction of the courts," *see id.* at 348-49 (quoting Restatement (Second) of Judgments § 26(1)(c) (1982)), and concluded that it would be inequitable to preclude plaintiff's claim pursuant to *res judicata* where the first judgment had "expressly reserved" plaintiff's ability to bring a second action, *id.* at 349 (quoting Restatement (Second) of Judgments § 26(1)(b) (1982)).[5] The Court of Appeals

[5] *See also* Restatement (Second) of Judgments § 26(1)(b) (noting that the general rule against claim splitting set forth in § 24 of the Restatement does not apply when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action"). The Restatement rule has been cited with

therefore held that *res judicata*—standing alone—did not bar the § 1983 claim in the subsequent plenary action.[6]

In other words, while a final judgment on the merits normally extinguishes all other claims arising from the same transaction, a concurrent dismissal without prejudice for some claims preserves a plaintiff's ability to refile those specific claims in a second action. That is precisely what the Plenary Judgment did by dismissing Rosenthal's § 1983 claim without prejudice and inviting Rosenthal to refile that specific claim in a different court.[7]

---

approval by other jurisdictions applying state and federal preclusion law. *See, e.g.*, *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 586 (1st Cir. 1995) ("Under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action."); *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 712 n.13 (5th Cir. 2005) ("A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion." (quoting *King v. Provident Life & Accident Ins. Co.*, 23 F.3d 926, 928 (5th Cir. 1994))).

[6] Of course, as *Parker* confirms by nevertheless affirming dismissal of the claim, the Restatement rule is an exception to *res judicata* and does not necessarily immunize a plaintiff from the entirely separate doctrine of collateral estoppel (issue preclusion). *See* 93 N.Y.2d at 349-50. Indeed, the *Parker* court ultimately concluded that while the plaintiff in question was "not precluded from bringing this claim [under *res judicata*], he [was] collaterally estopped from relitigating the issues raised in the complaint." *Id.* at 350. Here, in contrast to *Parker*, the district court based its dismissal solely on *res judicata* and did not consider whether issue preclusion could independently bar Rosenthal's claim. Although Rosenthal's instant suit is not precluded by *res judicata*, it is possible that Rosenthal is collaterally estopped from relitigating issues relevant to her substantive claims. But we leave this issue to be considered, in the first instance, by the district court.

[7] It appears that Rosenthal *did* then file an action in the Court of Claims, which had been decided and was on appeal when this appeal was being briefed, as referenced by all parties. Rosenthal Br. at 9-10; RIOC Br. at 12; Individual Defendants Br. at 11. The Court of Claims decision is not in the record, and the parties do not otherwise discuss its significance, if any, on this appeal. We likewise leave this issue to be considered, in the first instance, by the district court.

Accordingly, we conclude that the district court erred in concluding that the Plenary Judgment was a final judgment on the merits that precluded Rosenthal's § 1983 claim.

ii. *The Article 78 Dismissal*

Similarly, we conclude that the Article 78 dismissal cannot preclude Rosenthal's § 1983 claim either. The Article 78 court decided only that Rosenthal had failed to meet the high burden for expedited relief of an Article 78 proceeding—a proceeding in which, as the presiding justice aptly observed in denying reconsideration, "[discovery] is rare" and "the court's inquiry ends if it finds a rational basis for the challenged action, which it has," in contrast to a more fulsome plenary action. App'x at 91. But as to Rosenthal's claims that the proffered basis for termination was itself the product of false allegations by lying witnesses and a sham investigation, the Article 78 court merely noted in its dismissal that "the appropriate forum to determine that would be a trial in a plenary action" and that the "instant dispute belongs there, not here." App'x at 147.[8]

[8] Appellees incorrectly contend that "it is enough that the Plaintiff-Appellant could have brought her § 1983 claim in the Article 78 proceeding for res judicata to apply." RIOC Br. 13 n.1; *see* Individual Defendants Br. 18. *Whitfield* shows otherwise. There, we explained that a "pure" Article 78 proceeding is one in which

Even if the Article 78 proceeding were considered to have impliedly adjudicated Rosenthal's *discrimination* claims, as the New York State Supreme Court later concluded and the Appellate Division since agreed,[9] it is settled law that a "judgment in a 'pure' Article 78 proceeding," such as this one,[10] "does not preclude, under the doctrine of *res judicata*, a later section 1983 damages claim based on the same set of facts." *Whitfield*, 96 F.4th at 525. Accordingly, the Article 78 dismissal cannot preclude Rosenthal's instant suit.

damages are unavailable, and that "the default rule must be that a proceeding initiated by an Article 78 petition will be a pure Article 78 proceeding, absent clear indications otherwise" such that "claim preclusion should apply *only* if it is clear that the state court treated the prior proceeding as one in which plenary relief was available." *Whitfield*, 96 F.4th at 511, 528-29 (emphasis added). In other words, we held precisely the opposite of Appellees' assertion: it is not enough that Rosenthal *could* have brought her § 1983 claim, because even if she had, the Article 78 proceeding's preclusive effect is dependent on whether the Article 78 court *did in fact* exercise its discretion to adjudicate that claim on the merits by converting the proceeding into a hybrid proceeding or plenary action. *See id.* "[C]laim preclusion will not apply 'if the initial forum did not have the power to award the full measure of relief sought in the later litigation.'" *Id.* at 523 (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)). The Article 78 court here expressly declined to adjudicate Rosenthal's § 1983 claim, and in any event "we will not presume" that an Article 78 court exercised its discretion to convert the proceedings beyond a pure Article 78 proceeding absent "clear indication." *Id.* at 529.

[9] *Rosenthal*, 200 N.Y.S.3d at 342-43 ("Thus, not only has plaintiff already had a full and fair opportunity to litigate the *discrimination* claims in the prior article 78 proceeding, but those claims were necessarily decided." (emphasis added)).

[10] A "prior proceeding initiated under Article 78 will be deemed a hybrid proceeding only if: (1) the state court petitioner sought relief that is not available under Article 78; and (2) the state court treated the proceeding as a hybrid one." *Whitfield*, 96 F.4th at 526-27 (footnote omitted). Here, Appellees do not appear to dispute that the Article 78 proceeding was pure in nature. There is no indication that Rosenthal even sought plenary relief in her petition, let alone that the Article 78 justice adjudicated the petition as a hybrid action. On the contrary, the Article 78 justice expressly stated that, notwithstanding Rosenthal's failure to state a claim for summary relief under Article 78, a "trial in a plenary action" remained available to adjudicate Rosenthal's claims. App'x. at 147.

## CONCLUSION

When presented with a New York state court dismissal that dismisses some, but not all, claims on the merits, a district court must scrutinize the dismissal to determine which particular claims were dismissed with leave to refile elsewhere. Where, as here, a New York court has preserved the plaintiff's ability to refile specific claims, a district court may not bar those specific claims from being reasserted in a federal action under New York's doctrine of *res judicata*. And where there is uncertainty as to whether a claim has been dismissed on the merits or not, the district court must resolve that uncertainty against imposing preclusion. Here, however, we have no such uncertainty. The record is clear that Rosenthal's § 1983 claim was never adjudicated on the merits by either state proceeding in the record and was instead dismissed with leave to refile. Accordingly, *res judicata*, standing alone, cannot bar Rosenthal's instant suit here.

Because the district court's decision was predicated entirely on *res judicata*, we do not reach Appellees' alternative arguments regarding the merits of Rosenthal's § 1983 claim and other grounds for dismissal such as whether Rosenthal is collaterally estopped from raising issues relevant to the merits of her § 1983 claim and the import of the Court of Claims decision, if any. Instead, we

remand to the district court to consider these alternative arguments for dismissal, many of which are fact-bound and ill-suited for appellate review, in the first instance. We are equally confident that the district court, exercising its sound discretion to permit supplemental briefing or amendment of the complaint as appropriate, will be able to incorporate any subsequent developments in the New York state court proceedings.

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** for proceedings consistent with this opinion.